IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 1:19-cv-00077-LTB-MEH

RICHARD RATCLIFF and
AMY JO RATCLIFF,

    Plaintiffs,
v.

GOOD TIMES RESTAURANTS, INC., and
BD OF COLORADO, LLC,

    Defendants.

___

ORDER
___

Before me is Defendants' Partial Motion to Dismiss, ECF No. 16, and Plaintiffs' Motion for Certification of Questions of Law to the Colorado Supreme Court, ECF No. 21. Defendants moved to dismiss Plaintiffs' claims relating to the loss of consortium to both Plaintiffs, negligence resulting in bodily injury for Amy Ratcliff, and negligent infliction of emotional distress of a bystander for Amy Ratcliff. Plaintiffs responded and additionally moved to certify certain questions to the Colorado Supreme Court. After consideration of the parties' arguments, for the reasons set forth below: (1) I grant the Motion to Dismiss in part; (2) I deny the Motion to Dismiss in part; and (3) I deny Plaintiffs' Motion for Certification of Questions of Law to the Colorado Supreme Court.

1

## I. BACKGROUND

In September 2017, Plaintiffs and Mrs. Ratcliff's daughters visited Colorado from Wyoming and went to one of Defendants' restaurants. Second Am. Compl., ECF No. 14 at ¶¶ 9 & 16. Mr. Ratcliff ordered a milkshake and when he took a drink through a straw, he ingested shards of broken glass. *Id.* at ¶¶ 22–26. He began bleeding from the mouth and went to the hospital. *Id.* at ¶¶ 30, 31, 36. Mr. Ratcliff had subsequent complications, including difficulty swallowing, aspiration, and fainting. *Id.* at ¶¶ 39, 41, 43. After returning to Wyoming, he had ongoing neck pain and a doctor discovered that pieces of glass remained in his throat. *Id.* at ¶¶ 51 & 57. He reported increased anxiety and night terrors and sought therapy after the event. *Id.* at ¶¶ 60, 61, 65, 71.

Additionally, after the event, Mrs. Ratcliff began to have migraines, blackouts, and vertigo. *Id.* at ¶ 84, 95. She fainted from the migraines, was unable to drive, and Mr. Ratcliff alleged he was unable to look for an office job because he was helping care for her. *Id.* at ¶¶ 90, 93, 95.

Plaintiffs asserted nine claims for relief, including: (1) negligence on behalf of Mr. Ratcliff; (2) negligence per se on behalf of Mr. Ratcliff; (3) strict products liability on behalf of Mr. Ratcliff; (4) breach of warranty through the Colorado Uniform Commercial Code on behalf of Mr. Ratcliff; (5) negligent infliction of emotional distress of Mr. Ratcliff; (6) loss of consortium on behalf of Mrs. Ratcliff; (7) negligence resulting in bodily injury for Mrs. Ratcliff; (8) negligent infliction of emotional distress of bystander for Mrs. Ratcliff; and (9) loss of consortium on

behalf of Mr. Ratcliff. *Id.* at ¶¶ 96–149. I note that Mrs. Ratcliff went by the surname McHenry when this case was filed, but she has since married Mr. Ratcliff and I granted her Motion to Amend the Caption. ECF No. 29.

## II.   LAW

### A. Federal Rule of Civil Procedure 12(b)(6)

To avoid dismissal under Rule 12(b)(6), "a complaint must contain enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that enables the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

A court may not dismiss a complaint merely because it appears unlikely or improbable that a plaintiff can prove the facts alleged or ultimately prevail on the merits. *Twombly*, 550 U.S. at 556. Instead, a court must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements. *Id.*

Conclusory statements and legal conclusions are not accepted as true; mere "labels and conclusions" and "a formulaic recitation of the elements of a cause of action" will not suffice. *Khalik*, 671 F.3d at 1190–91 (quoting *Twombly*, 550 U.S. at

555). As such, when examining a complaint under Rule 12(b)(6), I disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable. *Id.* at 1191.

### B. Certification of Questions to the Colorado Supreme Court

Under Colorado Appellate Rule 21.1, a federal court may request that the Colorado Supreme Court answer a certified question if it is determinative of the pending cause and there is no controlling precedent in the supreme court:

> The supreme court may answer questions of law certified to it by . . . a United States District Court . . . when requested by the certifying court, if there is involved in any proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court that there is no controlling precedent in the decisions of the supreme court.

Colo. App. R. 21.1.

The decision to certify is left to the federal court's discretion. *Anderson Living Tr. v. Energen Res. Corp.*, 886 F.3d 826, 839 (10th Cir. 2018) (citing *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974)). Certification of questions saves judicial resources and builds a "cooperative judicial federalism." *Id.* (quoting *Lehman Bros.*, 416 U.S. at 391). But, a question should not be certified routinely, even if it pertains to unsettled state law. *Id.* (citing cases). The federal court has a duty to decide difficult or unsettled questions of state law and will do so if there is a "reasonably clear and principled course . . . ." *Id.* (quoting *Pino v. United States*, 507 F.3d 1233, 1236 (10th Cir. 2007)).

### III. ANALYSIS

Defendants move to dismiss Plaintiffs' claims for loss of consortium, negligence resulting in bodily injury for Mrs. Ratcliff, and negligent infliction of emotional distress of a bystander for Mrs. Ratcliff. ECF No. 16.

#### A. Loss of Consortium Between Unmarried Cohabitants

Defendants argue that Plaintiffs do not sufficiently state a claim for loss of consortium because Plaintiffs were not married when the alleged torts occurred. ECF No. 16 at 2. Plaintiffs respond that some courts recognize loss of consortium claims for unmarried partners. Pls.' Resp., ECF No. 20 at 5. Plaintiffs continue that because "an action for loss of consortium is meant to compensate people when they suffer losses in important relationships due to tortious injury, cohabitants whose legitimate expectations are overturned by the negligent acts of a third party should be able to seek compensation for these losses." *Id.* at 5–6. They argue that the claims should not be dismissed, or that I should certify to the Colorado Supreme Court the question of whether unmarried cohabitants may recover against negligent actors for loss of consortium. *Id.* at 6; ECF No. 21 at 3.

In their Motion to Certify, Plaintiffs argue that "the issue of whether a loss of consortium claim is available to unmarried cohabitants is a novel issue of law and it raises important questions of social policy." ECF No. 21 at 2. They add that there is no controlling precedent in the Colorado Supreme Court whether an unmarried cohabitant has a claim for loss of consortium against a negligent actor. *Id.*

Regarding the certification issue, Defendants generally respond that certification would be inappropriate because it only pertains to three of the nine causes of action and as such would not be determinative of the entire case. Defs.' Resp., ECF No. 26 at 3. They continue that, unless discovery was stayed, the case would effectively split into separate hearings on the same facts as I awaited the response from the Colorado Supreme Court. *Id.* Plaintiffs reply that Defendants too narrowly read Colorado Appellate Rule 21.1 and that the rule does not require that the entire case be determined on certification, "just whether the 'cause then pending in the certifying court' may be determinative." Pls.' Reply, ECF No. 28 at 1.

As this case proceeds under diversity jurisdiction, ECF No. 14 at ¶ 7, Colorado substantive law and federal procedural law applies. *Haberman v. The Hartford Ins. Grp.*, 443 F.3d 1257, 1264 (10th Cir. 2006). Under Colorado law, "[i]n all actions for a tort by a married person, both spouses have an equal right to recover for loss of consortium of his or her spouse." Colo. Rev. Stat. § 14-2-209. However, there is little statutory or case law in Colorado regarding loss of consortium for unmarried cohabitants.

The Colorado Court of Appeals mentioned that "consortium refers to affection, society, services, companionship, aid and comfort given by a spouse." *Spaur v. Allstate Ins. Co.*, 942 P.2d 1261, 1264 (Colo. App. 1996); *cf. American Insurance Co. v. Naylor*, 103 Colo. 461, 87 P.2d 260 (1939) ("A person who has lost the society, companionship, and services of his or her spouse has sustained a personal injury."). However, courts around the country have recognized certain

claims for unmarried cohabitants that were traditionally reserved for those who were married. Dan B. Dobbs et al., Dobb's Law of Torts § 392 (2d ed. 2019) (collecting cases).

While claims for loss of consortium between unmarried cohabitants are infrequent, the movement toward allowing them to make the claim aligns with the increase of unmarried cohabitants in the United States. Thomas J. Vesper, Litigating Tort Cases § 25:14 (2018) (collecting cases); *but see* Marsha Garrison, Nonmarital Cohabitation: Social Revolution and Legal Regulation, 42 Fam. L.Q. 309, 313 (2008) ("Between 1970 and 2000, the number of U.S. unmarried-cohabitant households rose almost ten-fold, from 523,000 to 4,880,0000."). Further, the New Mexico Supreme Court recognized a loss of consortium claim for an unmarried cohabitant, reasoning that a claimant, instead of only being married, must prove an "intimate familial relationship" with the victim in order to recover. *Lozoya v. Sanchez*, 66 P.3d 948, 957 (N.M. 2003), *abrogated on other grounds by Heath v. La Mariana Apartments*, 180 P.3d 664 (N.M. 2008).

"If a district court or court of appeals believes that it can resolve an issue of state law with available research materials already at hand, and makes the effort to do so, its determination should not be disturbed simply because the certification procedure existed but was not used." *Lehman Bros.*, 416 U.S. at 395 (Rehnquist, J., concurring). In the context of this case, I choose not to certify the question to the Colorado Supreme Court.

Plaintiffs allege in their Complaint that they "had been in a romantic relationship for months and were cohabitating at the time" of the event. ECF No. 14 at ¶ 11. As such, Plaintiffs alleged an intimate familial relationship sufficient to defeat Defendants' Motion on the issue. I conclude that Plaintiffs may proceed on their loss of consortium claim.

### B. Negligence Resulting in Bodily Injury

Next, Defendants argue that Mrs. Ratcliff does not sufficiently state a claim for negligence resulting in bodily injury because Defendants did not a breach a duty owed to her. ECF No. 16 at 4. Defendants claim that: (1) Mrs. Ratcliff's alleged injuries were not a foreseeable risk as a consumer of Defendants' food; and (2) Mrs. Ratcliff did not consume their food in context of the claim. *Id.*

In their Response, Plaintiffs clarify that "[i]n addition to the severe emotional injuries that Mrs. Ratcliff suffered when she witnessed Mr. Ratcliff swallow multiple shards of glass and spitting up blood, she also suffered bodily injuries in caring for [Mr. Ratcliff] in the days and weeks following the incident." ECF No. 20 at 6. Plaintiffs' contend that a factfinder should decide whether her injuries were foreseeable. ECF No. 20 at 7.

To establish a negligence claim under Colorado law, a plaintiff must prove that: "(1) the defendant owed the plaintiff a legal duty of care; (2) the defendant breached that duty; (3) the plaintiff was injured; and (4) the defendant's breach caused that injury." *N.M. by & through Lopez v. Trujillo*, 397 P.3d 370, 374 (Colo. 2017) (citing *Vigil v. Franklin*, 103 P.3d 322, 325 (Colo. 2004)). The threshold

8

question is whether a defendant owed a duty to a plaintiff. *Id*. This a question of law determined by the court. *Id*. (citing *Vigil*, 103 P.3d at 325).

I find and conclude that Defendants did not owe a duty of care to Mrs. Ratcliff for this claim. Mrs. Ratcliff alleged that "Defendants had a duty to exercise reasonable care and take precautions to prevent foreseeable risk of injury to consumers of its food as set forth above." ECF No. 14 at ¶ 129. However, the basis of this claim is not that Mrs. Ratcliff consumed Defendants' food; she claimed that her bodily injury was "caused by witnessing [Mr. Ratcliff] swallow the glass and in caring for [him] in the days and months following the incident." *Id*. at ¶ 130.

On the face of her Complaint, witnessing Mr. Ratcliff experience harm and subsequently caring for him does not manifest a duty owed to her by Defendants. Thus, Mrs. Ratcliff's claim for negligence resulting in bodily injury will be dismissed.

### C. Negligent Infliction of Emotional Distress of Bystander

Finally, Defendants argue that Mrs. Ratcliff failed to sufficiently allege a claim of negligent infliction of emotional distress of a bystander. ECF No. 16 at 5. Defendants contend that Mrs. Ratcliff did not allege that she was in fear of her own safety, nor that she was in any danger. *Id*. Plaintiffs respond that Colorado law is outdated compared to national trends regarding a "zone of danger" theory of negligent infliction of emotional distress. ECF No. 20 at 7–10. Plaintiffs argue that I should apply a more modern approach and deny the Motion to Dismiss, or I should certify a question asking the Colorado Supreme Court which standard should be

used. *Id.* Defendants reply that it is not necessary for me to certify a question, because the Colorado Supreme Court has had years to consider the new standard and has chosen not to do so. ECF No. 26 at ¶ 7. They add that even under the modified standards, Plaintiff does not sufficiently allege the claim. ECF No. 25 at 5–6.

Under the current Colorado case law, to sufficiently allege a claim for negligent infliction of emotional distress, "a plaintiff must show that the defendant's negligence created an unreasonable risk of physical harm and caused the plaintiff to be put in fear for his or her own safety, that this fear had physical consequences or resulted in long-continued emotional disturbance, and that the plaintiff's fear was the cause of the damages sought." *Matthys v. Narconon Fresh Start*, 104 F. Supp. 3d 1191, 1206 (D. Colo. 2015) (quoting *Draper v. DeFrenchi–Gordineer*, 282 P.3d 489, 496–97 (Colo. App. 2011)). The plaintiff must show that any physical injury or long-continued emotional disturbance "was caused by her fear for her own safety." *Id.* (quoting *Scharrel v. Wal–Mart Stores, Inc.*, 949 P.2d 89, 93 (Colo. App. 1997)).

Since the ruling in *Draper*, the Third Restatement of Torts now provides a modified standard for negligent infliction of emotional distress of a bystander. ECF No. 20 at 8–9. It reads that:

> An actor who negligently causes sudden serious bodily injury to a third person is subject to liability for serious emotional harm caused thereby to a person who:
> (a) perceives the event contemporaneously, and
> (b) is a close family member of the person suffering the bodily injury.

Restatement (Third) of Torts: Phys. & Emot. Harm § 48 (2012). Absent is the necessity that the claimant herself feared harm. *Id.* at cmt. j.

Plaintiffs concede that under current Colorado law, the claimant must fear danger herself to make the claim. ECF No. 20 at 8. However, they argue that the Third Restatement is a more modern approach and versions similar to it have been accepted by a majority of jurisdictions cross the country. *Id.* at 9 (citing cases). They urge that I certify a question to the Colorado Supreme Court asking if Colorado would adopt the rule articulated in the Third Restatement, § 48. ECF No. 21 at ¶ 6.

In 1978, the Court adopted the Second Restatement's approach concerning "a plaintiff who himself is subjected to an unreasonable risk of bodily harm due to the negligence of another." *Towns v. Anderson*, 579 P.2d 1163, 1165 (Colo. 1978). However, the Court clarified that it would not analyze "the situation of the individual who suffers bodily harm due to emotional distress as the result of harm or peril to a third person occurring in his presence." *Id.* Since then, "in four Colorado Court of Appeals decisions, recovery has not been allowed for emotional distress as a result of witnessing another's injury when the plaintiff was outside the range of ordinary physical peril, regardless of familial relationship with the tort victim." John W. Grund et al., 8A West's Colorado Practice Series, Personal Injury Practice—Torts and Insurance § 38:11 (3d ed. 2018). The Supreme Court has denied certiorari on this issue. *Id.* (citing cases).

Colorado appellate courts have not opined on whether to adopt this aspect of the Third Restatement in the seven years since the Restatement's publishing. I

11

conclude that this is sufficient direction to follow the rule outlined in *Draper* and certification to the Colorado Supreme Court is not necessary. Mrs. Ratcliff does not sufficiently allege that she was personally in danger when she witnessed Mr. Ratcliff drink the milkshake. As such, she does not sufficiently assert a claim in the Complaint for negligent infliction of emotional distress of a bystander. I grant Defendant's Motion on this claim.

## IV. CONCLUSION

ACCORDINGLY, the Court ORDERS that Defendants' Motion to Dismiss, ECF No. 16, is

1. DENIED as to Plaintiffs' claims for loss of consortium (Counts VI and IX); and

2. GRANTED as to Mrs. Ratcliff's claims for negligence resulting in bodily injury (Count VII) and negligent infliction of emotional distress of bystander (Count VIII).

Additionally, the Court ORDERS that Plaintiff's Motion for Certification of Questions of Law to the Colorado Supreme Court, ECF No. 21, is DENIED.

Dated: July 2, 2019 Denver, Colorado.

BY THE COURT:

s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE